## POWELL v PRUDENTIAL INSURANCE CO.

Municipal Court of Cleveland

Decided —

Ben C. Ruby, Cleveland, for plaintiff.
McKeehan, Merrick, Arter & Stewart,
Cleveland, for defendant.

### OPINION

By LAUSCHE, J.

Plaintiff, as the designated beneficiary in a life insurance policy issued to her deceased husband during his life time, sues to recover the principal for which the life of her husband was insured.

The defendant admits the issuance of the policy and the death of the insured, but in avoidance of the plaintiff's claim alleges that except for the extended term insurance the rights of the insured under the policy lapsed on November 26, 1924, because the insured failed to pay the premiums.

The policy was issued to the insured on August 26, 1920. The insured failed to pay the premium due on November 26, 1924, although prior thereto his premiums were regularly paid.

On March 22, 1924, while the insured had strictly performed the conditions imposed upon him under the policy, he borrowed from the defendant ninety dollars, and as security for the repayment of the debt he pledged the insurance policy.

No part of the loan nor the interest was repaid to the defendant. On November 26, 1924, there was due the defendant on said loan the sum of $91.35.

Upon the failure of the insured to pay the premium and to exercise his options under the policy, the defendant on November 26, 1924, applied the cash surrender value of said policy less the amount of the indebtedness of the insured as payment upon a modified non-participating extended term policy of $1,908.65, insuring the life of Robert J. Powell for a period of three years and two hundred and twenty-six days. The insured died on June 20, 1931. The period of three years and two hundred and twenty-six days expired approximately on June 13, 1928.

The policy contained, among many other, the following provisions:

"If any premium be not paid when due * * * this policy shall be void and all premiums forfeited to the company, except as herein provided. The payment of any premium shall not maintain the policy in force beyond the date when the next payment becomes due, except as to the benefits provided for herein after default in premium payments."

"* * * that if there be any indebtedness to the company on account of this policy the amount of such paid-up-term policy shall be the face amount of this policy, less the amount of such indebtedness, and the term for which such paid-up-term policy shall run shall be changed to that term for which the cash surrender value of this policy herein specified, after deducting such indebtedness, will carry the modified amount at single premium term rates."

"Failure to repay any such indebtedness, or to pay interest, shall not avoid the policy unless the total indebtedness thereon to the company shall equal or exceed the loan value at the time of such failure, nor until one month after notice to that effect shall have been mailed by the company to the last known address of the insured, of the person to whom the loan was made and of the assignee of record at the home office of the company, if any."

The agreed statement of facts indicate that the defendant did, on November 6, 1924, mail to the insured notice that his premium was due on November 26, 1924, and that unless it was paid by that date or within thirty-one days thereafter the rights of the insured, except for the right to claim the cash surrender value of the policy, or the option to accept a policy of paid up non-participating term insurance, would be forfeited.

Furthermore, it is agreed by the parties that the notice designated in §§9420-7 and 9421 was never mailed to the insured.

Plaintiff contends that the defendant declared the rights of the insured terminated because the insured did not repay his loan when due; and that under such a situation the insured's rights under §§9420-7 and 9421, GC, could not be forfeited until and unless the indebtedness of the insured exceeded the loan value under the policy, nor until one month after notice to that effect shall have been mailed to the last known address of the insured.

On the other hand, the defendant takes the position that the rights of the insured with certain exceptions designated in the policy were forfeited, not because of the failure to repay the loan but only because the insured failed to pay the premiums as specified in the policy.

The statutes contain, among other conditions and terms, the requirement that the insurer, before it can declare the rights of the insured forfeited for the nonpayment of premium, must give to the insured a thirty-day period of grace within which time he can pay his delinquent premium and avoid the forfeiture of his rights. A covenant of this character was contained in the policy.

Sections 9420-7 and 9421 declare that the rights of an insured shall not be forfeited by reason of an indebtedness to the insurer unless the total indebtedness at the time of the failure to repay equals or exceeds the loan value of the policy, nor until one month after notice to that effect has been given to the insured. As already herein pointed out, the policy contained provisions conforming with the requirements of §§9420-7 and 9421.

Forfeitures for nonpayment of premiums or loans are looked upon with disfavor by the courts. However, in spite of the courts' attitude in this respect, it is their duty to enforce contracts as the parties make them provided they are not in conflict with positive law or public policy.

The legislature desiring to protect the insured against forfeitures for nonpayment of premiums, adopted the rule requiring the insurer to give the insured a thirty day period of grace within which to pay his delinquent premiums; and also in the case of a final forfeiture, in the event the policy has been in existence for three or more years, to secure to the owner a stipulated form of insurance for a period of coverage depending upon the cash surrender value of the policy at the time it lapsed.

The courts have uniformly held that the insurer upon the nonpayment of premiums and after the period of grace has expired has a legal right to declare the contract terminated excepting for the rights secured to the insured either under the statutes or the policy.

In the absence of the controversy that has arisen by force of the loan made to the insured and the statutes governing said loans, it is certain that thirty days after the nonpayment of the premium the rights of the insured with certain exceptions automatically came to an end.

The legislature, to secure to the insured further rights, has declared under §9420 that after the premium under a policy has been paid for three full years or more the insurer, subject to specified conditions, must loan to the insured, if the latter applies therefor, upon the sole security of the policy certain sums of money. In many jurisdictions, because of the absence of statutory regulation, the insurer, when money was loaned and the repayment of it secured by a pledge of the policy, inserted into the policy a provision holding the rights of the insured shall be forfeited for failure to repay the loan.

Many of the courts held such a provision to be a penalty and therefore unenforceable. There has, however, been a strong and logical minority view on that subject.

To obviate the infliction of this penalty upon the borrower, the legislature of our state provided that the failure to repay such a loan shall not forfeit the rights of the insured unless the loan equalled or exceeded the loan value of the policy and not until thirty days have expired after written notice has been given to the insured that his rights under the contract would be terminated.

From an examination of the facts in the instant case it is apparent that the amount of the insured's indebtedness to the defendant did not equal or exceed the cash surrender or loan value of the policy. The policy which is an exhibit in the case indicates that on November 26, 1924, which was three months after the end of the fourth year of the policy's existence, the loan and cash surrender value of the policy was $147.50, while there was at that time owing to the plaintiff the sum of $91.35. Manifestly under the statute even though written notice had been (but was not) given to the insured, the defendant could not legally have forfeited the plaintiff's rights, because the indebtedness was less than the cash surrender or loan value of the policy.

The plaintiff relies upon the case of **National Benefit Life Insurance Company v Hatcher, 14 Abs 313**, as authority for the proposition he urges this court. I have carefully examined the holding in that case and have concluded that the court there held that the rights of the insured were terminated by the insurer because the indebtedness exceeded the cash value of the policy; that under such a situation a legal termination of the policy was not effected because no written notice was served upon the insured as required by the statute.

On the other hand, if the policy was not declared terminated by reason of the indebtedness but rather because the insured failed to pay his premium, then the latter was entitled to a substituted nonparticipating paid-up-term policy giving him coverage over a period which the unpaid dividends and the excess of the cash surrender value of the policy over and above the indebtedness of the insured would have purchased.

The court indicated that if the dividends were paid to the insured as required by the policy the insurer would have had to issue to the insured a paid-up non-participating term policy which might have protected the insured until a time after his death.

In either of the two contingencies above mentioned, the finding of the court in the Hatcher case would have had to be for the beneficiary of the insured.

Now coming to the case before the bar, it must be admitted that the status of the loan was not such as would permit a forfeiture of the rights of the insured. The indebtedness was less than the cash surrender value of the policy. The dividends were regularly paid to the insured, while in the Hatcher case they were not.

Counsel for the plaintiff makes the claim that the insured was not paid his dividends for the quarter year beginning on August 26, 1924, and ending November 26, 1924. This period constituted the first quarter of the fifth year of the policy's life. The dividends by the terms of the policy were payable annually on condition that all of the premiums theretofore accrued had

been paid. At the end of the fourth year the insurer did pay to the insured the dividend earned that preceding year. At the end of the fifth year the dividend was not paid because the insured failed to pay his premiums for the last three quarters of that year.

Assuming that under §9420-6, GC, as well as under a liberal interpretation of the "Dividend Provisions" of the policy, the insured was entitled to a credit of a dividend earned by his policy during the first three months of the fifth year of the policy's life, but even with that fact conceded I still cannot, as a matter of fact, say that the insured was entitled to a paid-up non-participating policy of a longer period of coverage than the one given him.

In the Hatcher case under one assumption of the facts, the insurer was held liable because it failed to comply with the statute requiring a thirty day written notice of an intention to declare a forfeiture for nonpayment of a debt.

Under the other assumption of facts, if the indebtedness did not exceed the loan the insured was entitled upon the non-payment of premium to extended term insurance which was not given to him and which if given might have covered the life of the insured at the time of his death.

In the Hatcher case, the court in the final paragraph of the opinion stated:

"Taking both claims together, the failure to give notice as required by statute and the possibility that dividends were sufficient to extend the time of insurance, the conclusion is reached that the judgment should be affirmed, and it is so ordered."

I cannot come to the conclusion of fact that in the present case, under the proof that has been offered, it can be said that the dividend for the first three months of the fifth year of the policy would or might have been sufficient to have extended the paid-up non-participating insurance from July 13, 1928, to a point of time including the date of the insured's death on June 20, 1931.

On November 26, 1924, when the non-participating certificate was issued, the total reserve value of the policy was $147.50; the indebtedness of the insured to the defendant was $91.35 or, in other words, $56.15 less than his reserve or cash surrender value of the policy. For the $56.15 there was given to him a $1,908.65 policy insuring his life for a period of three years and two hundred and twenty-six days, or in other words until approximately July 13, 1928.

The insured died on June 20, 1931, approximately three years after his paid-up non-participating policy expired. It does not seem remotely possible that the dividends for the first quarter of the fifth year of the policy's life, even if the insured were entitled to them, which is a mooted question, could have been sufficient to extend the life of the policy down to a point including June 20, 1931, the date of the death of the insured. Moreover, the circumstances indicate that it was because of the nonpayment of the premium and not the failure to repay the indebtedness that the defendant cancelled the rights of the insured under the policy.

Undoubtedly the insurer in this action, upon the nonpayment of the premium, could have rightfully terminated the rights of the insured under the policy. It is also obvious that it did not have the power nor the right to forfeit the insured's rights because of the latter's failure to repay the debt, but that wrongfully it might have attempted to do so.

Recognizing that the insurer had a legal right to declare the insurance contract at an end because of the nonpayment of the premium and that it had neither the right nor the power to terminate the policy because of the failure of the insured to repay the debt, the plaintiff in the absence of proof to that effect is asking this court to hold that the insurer chose the illegal rather than the legal means of protecting its rights.

The law presumes that individuals act in conformity with their legal rights and duties rather than in violation thereof. **17 O. Jur. 98.** Furthermore, it must be kept in mind that on November 6, 1924, the insurer in writing notified the insured that his premium was due on November 26 and that if it was not paid on that date or within thirty-one days thereafter his policy rights would be forfeited. Said notification, followed by an unexplained cancellation made at the time therein designated, constitutes some evidence from which an inference can be drawn that the policy was terminated in accordance with the warning contained in said notice.

Thereafter, on November 26, 1924, in accordance with the notice mailed on November 6, 1924, and with the provisions of the policy, upon the forfeiture of the insured's rights for the non-payment of the premium the company automatically converted the original policy into a paid-up non-participating policy of insurance as previously herein described.

I have considered the proposition that it might be claimed that the insurer in violation of §9420-7 did forfeit at least that period of coverage under a paid-up non-participating certificate that would have been purchased for the $91.35 which was deducted from the cash surrender value of the policy on November 26, 1924.

In connection with this question, I quote from §9420-8 and the paragraph marked "Automatic Extended Insurance," appearing on page 2 of the policy:

**Section 9420-8.** "A provision which, in event of default in premium payments, after premiums shall have been paid for three years, shall secure to the owner of the policy a stipulated form of insurance, the net value of which shall be at least equal to the reserve at the date of default on the policy and on any dividend additions thereto, specifying the mortality table and rate of interest adopted for computing such reserves, less a sum not more than two and one-half per centum of the amount insured by the policy and of any existing dividend additions thereto, and less any existing indebtedness to the company on the policy. Such provisions shall stipulate that the policy may be surrendered to the company at its home office within one month from date of default for a specified cash value at least equal to the sum which would otherwise be available for the purchase of insurance as aforesaid and may stipulate that the company may defer payment for not more than six (6) months after the application therefor is made.

"This provision shall not be required in term insurances of twenty years or less."

"* * * if policy provides there be any indebtedness to the company on account of this policy the amount of such Paid-Up Term Policy shall be the face amount of this policy less the amount of such indebtedness, and the term for which such Paid-Up Term Policy shall run shall be changed to that term for which the Cash Surrender Value of this policy herein specified, after deducting such indebtedness, * * * "

Both under the statute and the policy the company, upon the forfeiture of the rights of the insured for the nonpayment of the premiums, had a right in determining the face value and the period of coverage given by the paid-up nonparticipating certificate to deduct from the cash surrender value of the policy the indebtedness of the insured to the company.

Accordingly, the finding of the court shall be for the defendant.